Wallace Kirk DAVIS, Respondent,

v.

Arthur Harry WERREMEYER, Appellant.

No. 50253.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

320

Harry M. James, John D. Hasler, St. Louis, Allen D. Churchill, St. Louis, of counsel, for appellant.

Gerritzen & Gerritzen, by Ray A. Gerritzen, St. Louis, for respondent.

HOUSER, Commissioner.

A trial jury returned a verdict for $15,663 in favor of Wallace Kirk Davis in his personal injury and property damage suit against Arthur Harry Werremeyer. Defendant has appealed from the judgment entered upon the verdict, following the filing of an unavailing motion for new trial.

Plaintiff's Chevrolet collided with defendant's automobile in a three-vehicle collision on Lindbergh Boulevard in St. Louis County, a four-lane, north-south trafficway. A Volkswagen Microbus, proceeding south, its driver intending to turn left into a filling station, stopped in the southbound lane next to the center line to permit northbound heavy traffic to pass. Defendant, driving a Thunderbird, coming from the north in the southbound lane next to the center line at a speed of 45–50 miles an hour, approached and struck the Microbus from the rear, then struck plaintiff's Chevrolet.

Defendant testified that he did not see the Microbus until he was 150 feet north of it, although under the evidence he could have seen it for as much as 443 feet. According to defendant, when he saw the Microbus in front of him and that it was stopped in his path he made a very sudden, hard application of the brakes. Proceeding on the straight highway the brakes held and nothing happened for 75 feet, but as he kept applying the brakes the Thunderbird went into a skid or slide, went over into the northbound lane, spun sideways and went sliding down the highway "sideways" for another 75 feet, started to pivot counterclockwise, swung around "somewhat across the lane" and on the wrong side of the highway, going south and east sideways, until the right rear of the Thunderbird hit the rear of the Microbus. Then the Thunderbird went another 5 or 10 feet and, either "instantaneously" or within a couple of seconds and while still in motion, collided with plaintiff's Chevrolet, which was northbound in the lane next to the center line. Defendant could not say what happened except that he applied his brakes and that the car went into a skid. He could not say whether he attempted to turn the steering wheel in any direction at this time, and testified that he lost control of the Thunderbird.

Plaintiff testified that when he first took particular notice of the Thunderbird in the oncoming line of traffic the Thunderbird was about 30 feet north of the Microbus and plaintiff's Chevrolet was 50 feet south of the Microbus. Plaintiff was then traveling 40–45 miles an hour. Plaintiff observed that at that instant the Thunderbird started to veer over and come across into plaintiff's lane, swerving sideways, "coming sideways" into the lane of traffic the Chevrolet was occupying. The Thunderbird kept coming sideways, at 50 miles an hour. Plaintiff applied his brakes, reducing his speed from 40 to 20 miles an hour, the Thunderbird still moving and still coming sideways in the northbound lane until it collided with the Chevrolet. At the moment of impact the front portion of the Thunderbird was in the northbound lane, the rest of the Thunderbird in the southbound lane, astraddle the center line, headed generally southeasterly. When the Thunderbird and Chevrolet came to rest they were both in the northbound lanes, headed north, parallel to each other.

In this factual situation plaintiff offered and the court gave three verdict-directing instructions, No. 1 on "vigilant watch and lookout," No. 2 on excessive speed, and No. 3, which it is alleged submitted negligent failure to drive to the right of the center line so as to pass plaintiff's automobile without interference, and give plaintiff his half of the major traveled portion of the highway (violation of § 304.015, par. 5, V.A.M.S.), combined with negligent failure to keep a "vigilant watch," stop or slacken speed (antecedent negligence).

Defendant-appellant's first complaint is that the court erred in giving Instruction No. 1 on lookout, directing a verdict for plaintiff upon a finding that defendant "operated" his Thunderbird southwardly on

Lindbergh, and east of the center line and over and upon the wrong side of the highway; that while defendant was "operating" his Thunderbird southwardly there was a Volkswagen Microbus standing still in the inside southbound lane "at said point mentioned in evidence"; that by keeping a vigilant watch and lookout for plaintiff's automobile and the Microbus defendant could have discovered them "in time thereafter to have avoided a collision" between plaintiff's and defendant's automobile; that defendant failed to exercise the highest degree of care to keep a vigilant watch and lookout, and that such failure constituted negligence, "and that defendant knew, or by the exercise of the highest degree of care, would have known that a collision was likely to occur if he did not take precaution to prevent a collision," and that as a direct result of such failure there was a collision with the Microbus and immediately thereafter a collision with plaintiff's automobile "at said point mentioned in evidence," with consequent injury and damage to plaintiff, and that plaintiff at all times was exercising the highest degree of care in the operation of his automobile.

Defendant claims that No. 1 completely ignored the essential factual element of the *skidding* of defendant's car, and does not hypothesize all of the necessary facts. Defendant asserts that his Thunderbird was not guided or driven or operated sideways, as submitted, but that the Thunderbird skidded sideways onto the wrong side of Lindbergh. Citing and relying upon Evans v. Colombo, Mo.Sup., 319 S.W.2d 549, 551–552, defendant claims that No. 1 ignored the fact of skidding, which was "one material phase of the whole issue of negligence," and therefore was not framed with reference to the facts; that the issue actually tried was whether the crossing of the center line by the Thunderbird onto the wrong side of Lindbergh and the subsequent collisions were "the result of negligent operation prior to the skid or accidental skidding"; that under Doyle v. Wilmesherrer, Mo.Sup., 358 S.W.2d 837, 841,

a Thunderbird is not driven or guided sideways and if it moves sideways and injures someone in so doing "the facts must be hypothesized from which the jury may find that the cause of that movement was negligence." Defendant says that No. 1 erroneously required a finding that defendant *operated* his car over and upon the *wrong* side of the highway, because the evidence showed that he did not drive and propel it over there; that No. 1 should have required a finding that defendant negligently operated the Thunderbird in such a manner as to cause it to skid across the highway, by failing to keep a lookout, as a result of which defendant was required to take evasive action which resulted in defendant skidding onto the wrong side of the road, colliding with the Volkswagen in the process and ultimately colliding with plaintiff's car. Tied in with these considerations is the objection that the instruction assumes that the "operation" of defendant's car on the wrong side of the road was the result of operation across the center line, thus excluding the possibility of being there by reason of skidding in an attempt to avoid colliding with the Volkswagen. Defendant also excepts to the language "at said point mentioned in evidence" on the ground that it is vague and confusing and gives the jury a roving commission as to when defendant could have discovered plaintiff's car by maintaining a vigilant watch.

The instruction attacked is a lookout instruction. "In that type of submission it is generally considered sufficient to hypothesize failure to keep a lookout and require a finding that such failure was negligence and directly caused the collision." Moore v. Ready Mixed Concrete Co., Mo. Sup., 329 S.W.2d 14, 25. No. 1 meets these requirements. It sufficiently hypothesizes a factual situation which gave rise to a duty on defendant's part to maintain a lookout and his failure to keep such a lookout, and submits that such failure was negligence, and causation. Language that defendant "operated" his automobile east of the center line and over and upon the wrong side does

not make the instruction bad. Such operation was not submitted in No. 1 as an independent act of negligence upon which plaintiff was counting for an ultimate finding of negligence. Failure to keep a "vigilant watch" and lookout was submitted. That the crossing over was characterized as "operation" rather than "skidding" does not affect the validity of the submission. That defendant skidded across the center line (as distinguished from driving or guiding the vehicles across) was not a fact essential to be found to authorize a verdict for plaintiff. Skidding was not the *cause* of the collisions, but was the *result* of defendant's antecedent negligence. The reference to "operation" was nothing more than connective tissue leading up to the fact of the collisions. Whether defendant's Thunderbird crossed the center line with the defendant in control of it, driving and operating in the conventional sense, or crossed over while the car was skidding and out of control, was immaterial to plaintiff's submission on the theory of failure to keep a lookout. The issue was whether defendant failed to see the Volkswagen Microbus and plaintiff's Chevrolet in time to avoid the collision by reducing the speed of his fast-moving Thunderbird and keeping it under control as he approached the two cars. The act relied upon to form the basis of a finding of negligence in No. 1 (failure to keep a lookout) occurred in time prior to the commencement of the skidding. Skidding was a subsidiary evidentiary fact. Under the evidence defendant, as a result of his failure to keep a lookout, suddenly found it necessary to apply his brakes hard. Defendant testified that the application of the brakes at the speed he was going was the "only thing" that caused the Thunderbird to go over into the northbound lanes. Under these circumstances the description of the going over as "operation" rather than "skidding" was not prejudicial. Facts from which the jury could find that the cause of the movement over was negligence were sufficiently hypothesized. In this connection see Anderson v. Bell, Mo.Sup., 303 S. W.2d 93.

■ Nor was there an improper assumption that defendant operated the Thunderbird across the center line. It was required to be found as a fact, and if plaintiff desired any more accurate terminology, or an equating of *skidding* with *operating,* or deemed the fact not clearly or sufficiently hypothesized in any particular, he should have offered a clarifying or amplifying instruction. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 501.

The effort to stretch Evans v. Colombo, supra, to fit the instant case must fail. The instruction condemned in Evans was not a lookout instruction, but a "crossing over the center line" instruction in which the crossing was the negligence counted upon, and where *the cause of the crossing was not in issue and was not submitted.* The instruction commenced at the time defendant crossed over the center line of the cross street. The evidence clearly showed that defendant's automobile skidded across the center line. Not merely an "evidentiary fact," this evidence of skidding "pervaded the whole case"; was "a vital element in the case," "a material phase of the whole issue of negligence." The case was tried on the theory that the car skidded. The instruction did not define the issue actually tried, but completely ignoring the matter of skidding, hypothesized only the crossing of the center line, the collision and the injury. Thus it enabled the jury to return a verdict for plaintiff if defendant's automobile crossed the center line and struck plaintiff's automobile, "regardless of the reason for the crossing, whether excusable or inexcusable, without any consideration of the manner in which the crossing occurred (while skidding) and without requiring the finding of any negligent act on the part of defendant which caused the skidding-crossing." Evans v. Colombo, Mo. App., 311 S.W.2d 141, 1. c. 146. In No. 1 the *cause* of the crossing of the center line (failure to keep a lookout, followed by hard jamming of the brakes) was the issue tried and submitted; the crossing and the skidding in so doing was a mere evidentiary

fact—not an element vital to the plaintiff's case—and the negligent act which caused the skidding-crossing was required to be found. The cases are not apposite.

We have examined the numerous other cases cited by defendant under Point I, A and B, and find them distinguishable either on the facts or the principles of law announced therein.

■ The reference to "said point mentioned in evidence" is not vague and confusing, and does not give the jury a roving commission as claimed. Defendant concedes that it has been held "that a specific location of the automobile the other party is charged with the duty of seeing is not an essential fact so long as the instruction properly states the duty to keep a lookout and that the failure to do so proximately caused the collision," but seeks to distinguish those cases because none of them involved multi-car collisions with the final collision involving the plaintiff. We do not find that fact to be a distinguishing factor in this case.

Defendant's second point is that the court erred in giving Instruction No. 2, on excessive speed, directing a verdict for plaintiff upon a finding that while plaintiff was "operating" his automobile north on Lindbergh Boulevard the defendant was "operating" his automobile southwardly thereon, "and that the defendant's automobile spun sideways and over onto the wrong side of Lindbergh Boulevard and the right rear thereof struck a Volkswagen Microbus stopped and standing still there, and immediately thereafter there was a collision between plaintiff's automobile and defendant's automobile in the inside northbound lane of Lindbergh Boulevard," and that "at and prior to the time of said collision the defendant drove and operated his Thunderbird automobile at a rate of speed that was high, excessive and unreasonable under all the circumstances that you find and believe from the evidence then and there existed, and that the rate of speed was such as to endanger the life and limb of plaintiff," and that in

driving at said rate of speed the defendant failed to exercise the highest degree of care and was negligent, and that defendant knew, or by the exercise of the highest degree of care would have known, that a collision was likely to occur if he did not take precaution to prevent a collision, and that as a direct result there was a collision between plaintiff's and defendant's automobiles with injury and damage to plaintiff and that plaintiff was exercising the highest degree of care in the operation of his Chevrolet automobile.

Defendant claims that No. 2 is "too broad, indefinite, uncertain and confusing, in that it relates a high, excessive and unreasonable rate of speed to 'said collision,' when the instruction refers to two separate collisions, and there is no evidence to support a charge of high and excessive speed at the time of the collision with plaintiff's car." Defendant seeks to draw the fine distinction that there is no evidence of high and excessive speed of the defendant's Thunderbird after the collision with the Microbus and at the time of the collision with the plaintiff's Chevrolet.

■■ This argument is unrealistic and impractical. "Said collision" occurs in the clause which immediately follows the reference to "a collision between plaintiff's automobile and defendant's automobile." This is the only time the word "collision" is used in this frame of reference, and therefore the term is not indefinite or uncertain. "Said collision" is not confusing. Since the collision with plaintiff's automobile immediately followed the striking of the Microbus, and since plaintiff obviously was suing for damages resulting from the collision between plaintiff's and defendant's automobiles, the term "said collision" must have been understood by the jury to refer to the latter. There was ample evidence to support the charge of excessive speed, namely, that the Thunderbird was "moving very fast—around 50 miles an hour," sliding down the highway sideways, at the time of the impact with plaintiff's Chevrolet.

■ Defendant claims that No. 2 "completely ignores the factual element of skidding and does not hypothesize all the necessary facts in regard thereto." On the basis of Doyle v. Wilmesherrer, Mo.Sup., 358 S.W.2d 837, defendant makes the argument that an automobile is not *driven* or *guided* sideways and if it moves in that direction and inflicts injury the plaintiff must hypothesize facts from which the jury may find that the cause of the movement was negligence; that this instruction does not require a finding that excessive speed caused the sideways spin, but improperly submits a finding that at and prior to the time of the collision defendant "drove and operated" his automobile at an excessive rate of speed, which would include the time defendant's car was on the wrong side of the highway. A careful reading of No. 2 satisfies us that it properly hypothesizes all necessary facts to submit the charge of negligently operating the Thunderbird at an excessive speed, causing the collision with plaintiff's automobile, immediately following the spinning of the Thunderbird sideways and over onto the wrong side of the highway and the striking of the Microbus; and that under No. 2 the jury could find that the movement was caused by defendant's negligent high speed.

■ Defendant claims that No. 2 is "misleading in that contrary to the evidence it requires the jury to find that the Volkswagen was on the 'wrong side of Lindbergh' when struck by the defendant."

All of the evidence indicated that the Volkswagen was on the west side of Lindbergh at all times, which was the "right side" for it. The only evidence that any of the three vehicles was on the "wrong side" was that defendant's Thunderbird came over onto its wrong side. That the Thunderbird was on the wrong side was a fact conceded by both parties. In this situation the reference in No. 2 to "the wrong side of Lindbergh," following the direct reference to the course and movements of defendant's automobile, reasonably could not

have been interpreted as a reference to the Volkswagen, but plainly referred to defendant's Thunderbird.

Defendant's third point is that the court erred in giving Instruction No. 3 which, after instructing the jury on the duty of the operator of an automobile to operate it upon the right half of the highway, and that when two motor vehicles are proceeding in opposite directions they shall pass each other to the right and each driver shall give the other one half of the main traveled portion of the highway, directed a verdict for plaintiff upon a finding that plaintiff was operating his Chevrolet northwardly; that while defendant was "operating" his Thunderbird southwardly on Lindbergh and east of the center line and on the wrong side of Lindbergh, the Microbus was stopped and standing still facing south on the highway; that there was a collision between the Thunderbird and the Microbus, and a second collision between the Thunderbird and plaintiff's automobile; that as the Thunderbird approached the plaintiff's automobile the Thunderbird "was spinning sideways east of the center line" and on the left hand side and wrong side of Lindbergh, "and sideways into and against plaintiff's automobile"; that defendant "failed to drive his Thunderbird automobile to the right side of the center line of Lindbergh Boulevard so as to pass the plaintiff's automobile without interference, after defendant * * * saw, or by the exercise of the highest degree of care, could have seen the * * * Microbus stopped and standing still on said highway there and plaintiff's automobile approaching on said highway, if so, in time to have stopped his said Thunderbird automobile and slackened the speed thereof and passed the plaintiff's automobile without interference, if you so find defendant * * * could have done so, and in so doing would have given the plaintiff the northbound half of the major traveled portion of Lindbergh Boulevard there, if you so find, then if you so find the facts to be, the Court instructs you that the defendant * * * was guilty of negligence, and if

you find that such negligence" directly caused the collision, injury and damage to plaintiff and that plaintiff at all times was exercising the highest degree of care in the operation of his said automobile, and was operating his automobile on the right hand side of Lindbergh Boulevard.

Defendant claims that No. 3 "injects a false issue into the case and fails to hypothesize all of the essential facts"; that it improperly injects the issue of liability under § 304.015, par. 5, V.A.M.S.

The portions of § 304.015, par. 5, V.A.M.S. pertinent to the inquiry follow:

"Whenever any roadway has been divided into three or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply: * *

"(5) Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and except when a roadway has been divided into traffic lanes, each driver shall give to the other at least one-half of the main traveled portion of the roadway whenever possible."

◼ Instruction No. 3 did not inject a false issue in the case.

Liability under § 304.015, V.A.M.S. was not a false issue in the sense that it was foreign to the issues pleaded. It was specifically and separately pleaded as one ground of liability, in paragraph 2–f of plaintiff's amended petition. Defendant did not move to strike paragraph 2–f but joined issue thereon by pleading the general denial to paragraph 2–f by number and letter.

It was not a false issue in the sense that it contained allegations of fact that were not true. The truth of the fact that the Thunderbird went over, onto and upon the wrong side of the highway was established by all of the evidence, including defendant's own express admission.

The issue which defendant claims is a false issue thus was pleaded and proved, and

we note further that when the evidence of the fact was offered, defendant made no effort to exclude it on the ground that it was a false issue.

There may be merit to the idea that the issue was not genuine, in the sense that it was not necessary for plaintiff to invoke the statute as a basis or predicate of liability, since plaintiff had two perfectly good theories of liability: antecedent negligent failure to maintain a lookout and excessive speed, and it might have been argued that the unnecessary injection of the issue was confusing and misleading. Defendant, however, has not raised this point, indeed has taken the opposite position, that in No. 3 there is no instruction on antecedent negligence. In passing we will say that we have considered and rejected the possibility that the jury was confused or misled by Instruction No. 3.

Defendant's thesis is that the giving of Instruction No. 3 constituted reversible error because "there is again a total absence of instruction on the *essential negligence,* defendant's negligence antecedent to the skid." On that basis defendant cites and relies upon Kitchen v. Wilson, Mo.Sup., 335 S.W.2d 38, in which it was stated that an instruction under § 304.015, subd. 5, under similar facts, should not have been given because there was no contention that defendant could have done anything to avoid the collision with plaintiff's automobile after defendant's vehicle struck the third vehicle. In our judgment the rule of Kitchen v. Wilson has no application for the reason that plaintiff's instruction under § 304.015, subd. 5, in that case, did not include a requirement of a finding of antecedent negligence in the operation of defendant's automobile so as to permit it to collide with the third vehicle. It submitted *only* facts which, if found, constituted a violation of the statute. By way of contrast, Instruction No. 3 properly and fully submitted defendant's antecedent negligent operation of the Thunderbird so as to permit it to collide with the Microbus, come over onto the wrong side of the highway, and strike plaintiff's Chevrolet. Under

the evidence and under No. 3 a jury reasonably could find that a sudden, hard application of the brakes was made necessary by defendant's negligent failure to keep a lookout and see the obstruction in his path, and to timely sense the danger, and his negligence in speeding under the circumstances, as a result of which negligence he violated the statute. In other words, the submission of the failure to pass to the right was based, and dependent upon, a finding of defendant's antecedent operation of his automobile so as to permit it to come into collision with the Microbus.

While No. 3 emphasizes the statutory duty to pass to the right and submits defendant's operation of the Thunderbird on the wrong side and defendant's failure to drive to the right side of the center line we think, considering the instruction as a whole and considering its component parts, that the gist and essence of what No. 3 submits is defendant's failure to drive to the right based upon and as a result of defendant's failure to see the stopped and standing Microbus in time to stop or slacken the speed of the Thunderbird which, if done, would have permitted the Thunderbird to pass plaintiff's Chevrolet without interference and would have given plaintiff the northbound half of the highway. We do not think that the emphasis placed upon the statutory duty prevented the jury from deciding the case upon the basis of the central fact that defendant was guilty of antecedent negligence, because all of the evidence points directly to the antecedent negligence of defendant as the efficient, producing and proximate cause of the skidding, the sideways movement, and the crossing of the center line.

Nor do we think that defendant should be permitted to claim protection from a submission under § 304.015, par. 5, V.A.M.S., on the ground that he was powerless to avoid a violation of the statute after his automobile went into the skid, where the facts plainly permit, and almost compel, the inference that defendant went into the skid by reason of his own fault, and there is a total absence of evidence that the skid resulted from accident or emergency conditions for which defendant was not responsible.

Next, defendant objects that No. 3 fails to hypothesize all of the essential facts, but does not specify what essential facts No. 3 fails to hypothesize, except to refer to "all of the essential facts of the skidding," and we find no such failure. Defendant argues that No. 3 assumes that defendant was driving and operating his car "sideways" on the wrong side of the road at the time of collision, ignoring all of the essential facts of skidding. All these postulates are preceded by an "if you find and believe from the evidence," and interspersed throughout the instruction are several "if you so find[s]," and the spinning and sideways movements are twice referred to in the instruction. The instruction is not subject to these criticisms.

Error is assigned in permitting plaintiff's counsel to cross-examine plaintiff's witness Mr. Wilkinson on what defendant said in his presence immediately after the collision. The witness had previously signed a written statement reciting that defendant had said "it was my fault; I looked up and I didn't have time to stop or words to that effect." On the stand the witness testified defendant said that it was his fault, but did not add the admission of defendant with reference to looking up and not having time to stop. When asked if he heard defendant say anything further the witness did not recall. Plaintiff's counsel asked if the witness heard defendant say "I looked up, I was on top of the man," but an objection on the ground that he was using a statement was sustained. Plaintiff's counsel claimed surprise, asked leave to cross-examine the witness on the basis of his signed statement, handed the statement to the witness and asked him to use it and refresh his memory. Defendant objected on the ground that the plaintiff was impeaching his own witness. The court

328 ◼

overruled, and the witness then testified according to the written statement. Defendant, treating this as a question of surprise and cross-examination of a hostile witness, claims error in permitting plaintiff to impeach his own witness without a proper foundation for surprise existing. Plaintiff joins issue on the right to claim surprise and the right to cross-examine a hostile witness on previous "inconsistent" statements, but the parties have misconceived the problem. This is not a question of surprise and cross-examination of a hostile witness, but is a simple case of a witness temporarily forgetting one item of evidence, of having his memory refreshed by reference to his previous written statement, and then testifying in full accord with the contents of the writing. There was no hostility. His testimony was not adverse to or contradictory of the writing. The "cross-examination" consisted of identifying the writing, asking the witness to refresh his memory and, after he had done so, asking the witness to tell what defendant told him about how the accident happened. The witness answered "To the best of my recollection he said 'It was my fault; I looked up and I didn't have time to stop or words to that effect.'" Counsel then asked "But it [the writing] did say he looked up?" The witness answered "Yes." The witness merely supplemented his original testimony by the addition of a fact which slipped his mind, after refreshing his recollection. We find no error in the rulings of the court with respect to the so-called "cross-examination" of plaintiff's witness.

◼ Finally defendant claims error in allowing plaintiff's counsel to read to the jury the entire contents of the written statement of plaintiff's witness Mr. Wilkinson, on the ground that it was hearsay. This point was waived by defendant's failure to object to the introduction of the statement in evidence. Defendant's previous objections to its use for impeachment or for refreshing the memory of the witness were not sufficient to raise the point that it was error to admit the entire contents of the

writing, which was offered in evidence for the asserted reason that "this statement has been questioned." Defendant asks us to invoke the plain error rule, Sup.Ct.Rule 79.04, V.A.M.R. A consideration of the contents of the written statement does not lead us to the conclusion that the reading of the contents of the statement, if error, affected the substantial rights of the defendant.

The judgment is affirmed.

COIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.