**William COULTER, Plaintiff-Respondent,**

v.

**BI–STATE DEVELOPMENT AGENCY OF the MISSOURI–ILLINOIS METROPOLITAN DISTRICT, a corporation, and Albert Daume, Defendants-Appellants.**

**Nos. 32995, 32996.**

St. Louis Court of Appeals.

Missouri.

Nov. 19, 1968.

Francis J. Eyerman, St. Louis, for defendants-appellants.

Lawrence E. Ehrhart, St. Louis, for plaintiff-respondent.

TOWNSEND, Commissioner.

In his action for property damage plaintiff procured a judgment against both defendants for $751.46, from which defendants appeal. Defendant Bi-State also appeals from that part of the judgment in favor of plaintiff denying Bi-State a recovery on its counterclaim for damages to its bus.

Plaintiff's evidence: Plaintiff, operating his station wagon, was involved in a collision with defendant's bus, operated by defendant Daume, at the intersection of 18th and Market Streets in the City of St. Louis. Market Street runs in a general east and west direction and 18th Street in a general north and south direction. There are three eastbound and three westbound traffic lanes on Market Street at 18th Street. Of the eastbound lanes the one adjacent to the center line of the street is approximately nine feet wide, as is the second lane lying immediately south of the first lane. The third eastbound lane—"the curb lane"—is about 25 feet wide. The westbound lanes on Market Street follow the same pattern, with the curb lane being about 24 feet wide. Driving eastwardly on Market Street plaintiff was in the center lane of the eastbound lanes and as he approached the intersection with 18th Street the traffic light controlling traffic on Market Street turned to red; plaintiff thereupon brought his car to a stop with the front end about two feet west of the western stripe of the cross-walk at that point. The cross-walk is approximately twelve feet wide. Another eastbound car stopped alongside plaintiff's car in the lane at plaintiff's left.

Plaintiff watched the traffic light on the northwest corner of the intersection, that is, the light which regulated northbound traffic on 18th Street, most of the time he was at the stop. He saw it turn from green to yellow to red. Just before the light changed to red, two southbound cars on 18th Street approached the intersection and stopped in the center lane of 18th Street, north of Market Street. He then noticed that the light governing traffic on Market Street had turned to green and thereupon he started his car forward in an easterly direction with the wheels of the car turned slightly to the south because of a jog in Market Street. His speed at this time was about five miles per hour. He traveled forward about 15 feet to the point of impact with defendant's southbound bus. He saw the bus for the first time after the collision. At the time of impact plaintiff's car was barely past the projection of the west curb of 18th Street across Market Street. When plaintiff saw the Market Street traffic light green in his favor he did not look to his left again. Pedestrian traffic was heavy at all four corners of the intersection. The impact of the collision was on the left front end of plaintiff's car. Plaintiff "approximated" the position of the bus after the collision as "the rear end of the bus was about even with the south curb line of Market Street". The front end of his car was turned about 90 degrees to the south by the collision and came to rest almost even with the south curb of Market Street.

Plaintiff's witness Lewis testified that he was sitting on a bench in the Plaza area north of Market Street and on the west side

of 18th Street, at a point 20–25 feet from the corner of the intersection. He noticed that two cars southbound on 18th Street came to a stop in the lane next to the center line of 18th Street. The bus in question, running in the curb lane of 18th Street, passed the witness at a time when the traffic signal was yellow. When the bus was 5 to 10 feet north of the intersection the traffic signal turned red and the bus entered Market Street when the light was red. Witness estimated the speed of the bus at 25 to 30 miles per hour as it entered the intersection; it kept on going and the collision occurred beyond the center line of Market Street.

Plaintiff's witness Rabbitt, operating his car eastbound on Market Street at the time of the incident, was stopped at the 18th Street intersection at the head of the eastbound lane next to the center line of Market Street. The plaintiff's car was stopped in the eastbound lane next to the witness' car. Witness saw that the traffic light at the southeast corner of the intersection, regulating southbound traffic on 18th Street, was red and prepared to move forward, his own traffic control being green; he looked to his left and saw the bus when it was about five feet north of Market Street. The bus came through at a speed of about 25 miles per hour, passed in front of witness' car and struck plaintiff's car.

I.

Appellant maintains that the trial court erred in not sustaining appellant's motion for a directed verdict because, it asserts, the plaintiff was contributorily negligent as a matter of law by reason of failure to keep a careful and vigilant lookout. The evidence shows that plaintiff watched the traffic light governing traffic on 18th Street most of the time that he was stopped at the intersection, that when he saw that signal turn red he looked to the signal regulating traffic on Market Street and found it to be green; thereupon he started slowly toward the intersection without looking further to his left but with concentration upon the traffic and pedestrians in front of him. We think that there arises an initial question of whether plaintiff failed to maintain a careful lookout. See Jones v. Fritz, Mo.App., 353 S.W.2d 393, 398. But if failure to take a last look to his left under such circumstances can be found to be a failure to maintain a lookout forward and laterally, still that conduct alone does not necessarily have the fatal significance which defendants would attach to it. Failure to maintain a lookout is not always negligence. It is one fact to be considered along with all the other evidence of the surrounding circumstances in order to determine whether the statutory requirement of care has been honored. Watson v. Long, Mo.App., 221 S.W.2d 967, 970. The duty of care is commensurate with the circumstances. Patton v. Hanson, Mo., 286 S.W.2d 829, 832.

" * * * it was not correct to say that a failure to keep a lookout to the right constitutes negligence as a matter of law. We have just held, as plaintiff insisted, that his failure to keep a lookout to the left was not negligence as a matter of law because a driver cannot keep a lookout in all directions at once; and certainly he must not keep his lookout in one direction only. What constitutes negligence in failing to keep a lookout in any direction at any particular time or place depends on the conditions and circumstances and usually is a jury question." Slaughter v. Myers, Mo., 335 S.W.2d 50, 54. Here the conditions and circumstances qualifying the need to maintain a lookout include the existence of a luminous traffic control system adopted under the ordinance placed in evidence. This Court has characterized as imperious the command of the red light of such a system: "Do not proceed!" Newell v. Peters, Mo. App., 406 S.W.2d 814.

The position of the motorist at an intersection regulated by such signals has been dealt with in Collier v. St. Louis Public Service Co., Mo.App., 298 S.W.2d 455: "A motorist favored with a green traffic signal has the right to assume that non-emergency

vehicles approaching on the intersecting street will obey the red light and come to a stop, and to rely upon such assumption until and unless he knows or by the exercise of the highest degree of care should know that the cross traffic is not going to obey the red light but intends to proceed into and across the intersection without stopping. * * * Reasonable minds could conclude that plaintiff had the right to assume that no bus would be operated through the red light and across the busy intersection and into his path." And see Williams v. Funke, Mo. App., 428 S.W.2d 11.

■ Appellant seeks to buttress its position by charging plaintiff with constructive knowledge of the position of the bus at the time when plaintiff last took his look at the traffic signal at the northwest corner of the intersection. Defendant says that "the bus was there to be seen" and so tries to establish contributory negligence by such constructive knowledge. The conclusion does not follow from the premised knowledge. Constructive knowledge of a fact can have no greater effect than actual knowledge of that fact.* And whether a litigant has failed to see what he should have seen is itself usually a question for the jury. Bischoff v. Dodson, Mo.App., 405 S.W.2d 514.

■ The evidence as to the most northerly position of the bus prior to collision places it ten feet north of the north curb line of Market Street. A distance of fifty-one feet intervened between plaintiff's car and the north curb line of Market Street (three traffic lanes of nine feet each and a curb lane of twenty-four feet). When plaintiff last took his look to his left and found that the signal regulating traffic on 18th Street was red, he saw that there were two cars facing south on 18th Street (north of Market Street) which had already stopped in obedience to the command of the signal. The bus was still to pass them on their right. The bus with the red light against it was still fifty-two feet north of the center line of Market Street, which line was itself nine feet north of plaintiff's car. Under such conditions would it have been reasonable for plaintiff to assume that the bus was going to obey the peremptory command of the light? With his own forward movement sanctioned by his own green light, the plaintiff had, according to the Collier case, supra, the right to assume that the bus would obey the red light and to rely upon that assumption, "until and unless he knows * * * [or] should know that the cross traffic is not going to obey the red light * * *." We do not believe that the evidence here establishes conclusively that the plaintiff, if he had observed the bus just before he himself moved forward, should have known that the bus was not going to obey the red light. Hence the question of what he should have known was for the jury.

## II.

Plaintiff's verdict-directing instruction hypothesized that the bus driver "either violated the traffic signal, or knew, or by the use of the highest degree of care, could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, or sounded a warning", but failed to do so. Defendant's assignment of error attacks only the second alternative of the hypothesis and contends that there was no substantial evidence from which the jury could find in accordance with that second alternative.

---

* Defendant misquotes the following broadly stated language, purportedly taken from Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540: "To look and not see what is obvious is negligence as a matter of law." If these had been the words of the court, defendant takes them out of context, the most significant part of which was that plaintiff, although not seeing defendant, would, if he had looked, have seen defendant already crossing an intersection as plaintiff approached the intersection —an intersection which in the words of the court defendant had "already preempted."

There was substantial evidence that the controlling light was red when the bus reached a point about ten feet north of the north line of Market Street and that the bus continued into Market Street without diminishing speed. There was substantial evidence that at that time there were southbound cars lined up in 18th Street in the lane next to that in which the bus was traveling, i. e., cars which were stopped in obedience to the red light. There was substantial evidence that at the same time there were cars lined up in Market Street—on the west side of 18th Street projected—waiting to make the eastward crossing of the intersection. There is no evidence of any obstruction to the southward view of the bus driver; indeed the latter testified that there were three cars—abreast—lined up in the eastbound lanes of Market Street immediately to the right of the intended route of the bus across Market Street.

Defendants would establish as the point of reference for determining when there was a reasonable likelihood of collision the moment when plaintiff first gave notice that he was going to proceed across the path of the bus, with the concomitant need to show the location of the bus at that time. We think that here the discernment of likely catastrophe should occur at an earlier time. The nearest of the stopped eastbound cars on Market Street was at least forty-seven feet south of the bus when the bus was 5–10 feet north of the north line of Market Street and moving against the red light. Given the fact that the control light for eastbound traffic was green—as the bus driver should have known—and the resultant probability that an eastbound driver would move eastward into the intersection, we think that the bus driver could well have known that there was a reasonable likelihood of collision with an eastbound vehicle and that he could have so known at the time when the bus was 5–10 feet north of the north line of Market Street. The already stopped cars, standing in the 18th Street lane next to the bus lane in obedience to the red light, should have well apprised him of the likelihood of collision. Did he then so know or could he have then so known of the reasonable likelihood of collision at a time when he could have stopped the bus or have sounded a warning and so have avoided the collision?

As to the distance within which the bus could have stopped: There was evidence that the bus was ten feet north of the north line of Market Street at a time when its controlling light was red. There was a distance of forty-two feet from the north line of Market Street to the center line of Market Street; from that center line there was a further distance of nine feet to the north line of the lane in which plaintiff was stopped. Thus after the light had turned red the front end of the bus traversed a distance of 63 feet to reach the left front corner of plaintiff's car. It proceeded eight feet farther before striking plaintiff's car, for the evidence shows that the point of impact was about eight feet from the front of the bus behind the right front wheels of the bus. So, if the bus had been stopped in any distance short of 63 feet after the light had turned red the collision would have been avoided. Could the driver have stopped his bus within that distance? Testimony showed that the bus crossed the intersection at undiminished speed. The driver testified that he did not apply his brakes at any time until after the impact. The evidence permits a computation that would place the front end of the bus at the time of impact 24 feet north of the south curb line of Market Street. Defendant driver testified that after impact the bus came to rest on 18th Street with the front end of the bus thirty-five feet south of the south curb line of Market Street. Thus there was an actual demonstration that under the conditions then prevailing the bus could be stopped within 59 feet.

As to sounding a warning: We think that the evidence clearly indicates that if the bus driver had sounded his horn at the time when he first should have apprehended that a collision with a crossing vehicle was reasonably likely, namely, when he approached the north curb line of Market Street and at

a time when the plaintiff had not yet begun his eastward movement, a collision would have been avoided. The plaintiff, after ascertaining that the light for southbound traffic was red, turned his attention to the light controlling eastbound traffic on Market Street and saw that it was green. If a warning horn had been sounded at the proper time plaintiff would have heard it in such interval of time or within a fraction of a second thereafter. Plaintiff began his eastward movement only after looking and seeing that his traffic light was green and he began that movement at such a low rate of speed that he could, as appellant's brief reiterates, have stopped "almost instantaneously"—certainly within the 12-foot crosswalk. The impact occurred about two feet east of the east line of the crosswalk.

We find no error in the trial court's giving of the second alternative hypothesis in plaintiff's verdict-directing instruction.

III.

■ The trial court sustained an objection to the admission of a signed statement given by plaintiff to Bi-State's representative two days after the collision in question. Defendant sought to introduce the statement as containing admissions against interest, all relating to the position of plaintiff's car in Market Street, and made appropriate offer of proof after the trial court excluded the writing. When plaintiff was cross-examined by defence counsel, he identified the writing and his signature thereto. He was asked about the statements made in the writing concerning the position of his car in Market Street and readily admitted the statements there made; he stated that he was in error as to the pertinent statements made to Bi-State's representative, having gone back to the locale and reviewed the situation. Thus, the admissions asserted by defendant had already been either directly testified to by plaintiff or admitted by plaintiff upon cross-examination. When objection was made to the admission of the written statement, the court commented:

"He's testified that these statements were made and you [defence counsel] asked him about it. I'll sustain the objection to that."

Plaintiff had already explained at the trial why the relative statements in the writing differed from his testimony at the trial and consequently admission of the writing would have been merely cumulative. The jury was already well informed on the subject; if there was any error in the court's excluding the writing it was harmless error.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

ANDERSON, P. J., RUDDY, J., and JAMES H. KEET, Special Judge, concur.

WOLFE, J., not participating.